FILED

2012 JUL 26 PM 1:39

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

In the United States District Court
For the Middle District of Florida
Orlando Division

| | |
|---|---|
| ROGELIO "ROGER" CORTES,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF ORLANDO, a municipal corporation and political subdivision of the State of Florida, CHIEF VAL DEMINGS, in her official capacity as Chief of the Orlando Police Department, FRANK SIKOS, individually and in his official capacity, RHONDA HUCKELBERRY, individually and in her official capacity, RANDALL PENNINGTON, individually and in his official capacity, and TIMOTHY KUZMA, individually and in his official capacity.<br><br>Defendants. | Case No. _____<br><br>6:12-CV-1152-Orl-18TBS |

## COMPLAINT

Plaintiff, ROGELIO "ROGER" CORTES, by and through the undersigned counsel, sues the Defendants, THE CITY OF ORLANDO, a municipal corporation and political subdivision of the State of Florida, VAL DEMINGS, in her official capacity as Chief of the Orlando Police Department, FRANK SIKOS, individually and in his official capacity, RHONDA HUCKELBERRY, individually and in her official capacity, RANDALL PENNINGTON, individually and in his official capacity, and TIMOTHY KUZMA, individually and in his official capacity, and alleges as follows:

1

## Introduction

1. This is a federal civil rights action on behalf of victim, ROGELIO "ROGER" CORTES (hereinafter "ROGER CORTES").

2. ROGER CORTES was shot multiple times by police officers resulting from the investigation of a stolen credit card.

## Jurisdiction and Venue

3. The Original "Federal Question" Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 to redress the deprivation, under color of state law, of rights secured to the Plaintiff by the United States Constitution.

4. Plaintiff's claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to the Plaintiff by the Constitution and laws of the United States and by 42 U.S.C. § 1988.

5. Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) because one or more Defendants are situated within, and under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the wrongful acts complained of occurred within the Middle District of Florida.

6. At all times material hereto, Plaintiff, ROGER CORTES, has been a resident of Orange County, Florida.

7. All conditions precedent to this lawsuit, if any, have been satisfied or waived.

8. This is a civil complaint in which the damages exceed the amount of $75,000, exclusive of attorney's fees and costs.

## Parties

9. At all times material hereto, Plaintiff ROGER CORTES has been a male citizen of the United States.

10. At all times material hereto, Defendant, CHIEF VAL DEMINGS (hereinafter "DEMINGS"), or her predecessor, was acting in her official capacity as CHIEF of the ORLANDO POLICE DEPARTMENT, and promulgated the policies and procedures governing the investigation of suspects, arrest of citizens and detention of citizens. DEMINGS, or her predecessor, was responsible for supervising the training, instructing, disciplining, and controlling the conduct of the Orlando Police Department ("OPD") and its police officers, including FRANK SIKOS (hereinafter "SIKOS"), RHONDA HUCKELBERRY (hereinafter "HUCKELBERRY"), RANDALL PENNINGTON (hereinafter "PENNINGTON"), and TIMOTHY KUZMA (hereinafter "KUZMA"). DEMINGS, or her predecessor, was also the final policy maker and supervisor for the Orlando Police Department and its police officers, including SIKOS, HUCKELBERRY, PENNINGTON, and KUZMA. Defendant, DEMINGS is being sued in her official and supervisory capacity.

11. Defendant SIKOS was at all times pertinent hereto, an OPD police officer acting within the course and scope of his employment. SIKOS is sued in his official and individual capacity.

12. Defendant HUCKELBERRY was at all times pertinent hereto, an OPD police Sergeant acting within the course and scope of her employment, and the direct supervisor of SIKOS. HUCKELBERRY is sued in her individual, official, and supervisory capacity.

13. Defendant PENNINGTON was at all times pertinent hereto, an OPD police officer acting within the course and scope of his employment. PENNINGTON is being sued in his individual, and official capacity.

14. Defendant KUZMA was at all times pertinent hereto, an OPD police officer acting within the course and scope of his employment. KUZMA is being sued in his individual and official capacity.

15. All actions relevant to this suit occurred in Orange County, Florida.

16. At all times pertinent hereto the Defendants were acting under color of state law, to wit:

> State statutes, ordinances, regulations, customs and usages of the State of Florida and in their actions and appearances pursuant to their authority as police officers and municipal entities.

### Allegations of Fact

17. On November 20, 2010, retired Orlando police officer Duane King (hereinafter "KING") received a call from the bank that issued his credit card, and was informed that his credit card had been stolen and was being used without his consent.

18. Rather than report the incident to the General Police Crime Intake or the Economic Crimes Unit, KING informed his wife, HUCKELBERRY, who was assigned to the East Orlando Tactical Unit of that agency.

19. The East Tactical Unit of OPD was a unit who was directed to focus on issues surrounding firearms and violent crimes.

20. KING told HUCKELBERRY that he suspected his credit card had been stolen from the LA Fitness Gym at 2999 East Colonial Drive in Orlando, Florida.

21. In spite of the focused role of her unit and the clear conflict of interest (due to the fact the alleged crime involved a family member), HUCKELBERRY decided to personally investigate the matter with the assistance of police officer SIKOS, also of the OPD East Tactical Unit.

22. At all times during their stolen credit card investigation, SIKOS drove HUCKELBERRY in his Orlando Police Department issued F-150 pickup truck.

23. In the ordinary course of business for OPD, a patrol officer would have taken an initial report of a suspected stolen credit card.

24. However, neither HUCKELBERRY nor KING reported the stolen credit card to any patrol officer to take an initial report.

25. In the ordinary course of business for OPD, the matter would have been turned over to the Economic Crimes Division of the OPD.

26. Despite the clear conflict of interest, and even though the investigation took her to business outside of the geographical boundaries of her Tactical Unit, HUCKELBERRY failed to turn the investigation over to the Economic Crimes Division.

27. HUCKELBERRY would not have undertaken such an investigation, but for her husband, KING being the alleged victim.

28. On November 20, 2010, upon SIKOS' arrival at work, and without following the proper channels, HUCKELBERRY directed SIKOS to assist in investigation of the credit card theft case involving her husband.

29. At that time, HUCKELBERRRY and SIKOS left the meeting on International Drive (where they were supposed to be assisting with issues surrounding the Florida Classic football game) and traveled across the city of Orlando to LA Fitness on East Colonial Drive.

30. Continuing the investigation, SIKOS and HUCKELBERRY drove to the corporate office for Target located near Conroy Road on Millenia Plaza Way in Orlando.

31. Once at the corporate office, HUCKELBERRY and SIKOS obtained photographs and video of the men who were alleged to be using the credit cards that had been stolen from KING and/or others from LA Fitness.

32. The next day, SIKOS and HUCKELBERRY began their shift and, rather than work in their department involving gangs and violent crimes, they again worked on the credit card investigation involving HUCKELBERRY's husband. It was their plan to return to LA Fitness with the photographs and video they had obtained from the corporate Target Office and to present the photographs and video to the employees of LA Fitness to see if anyone recognized the men who were now suspects in the credit card investigation.

33. SIKOS drove his OPD issued F-150 pick-up truck to the parking lot of the LA Fitness, which was in the same parking lot as another Target store. HUCKELBERRY was in the passenger seat.

34. As SIKOS and HUCKELBERRY were driving through the lot of the Target store, they noticed a white mini-van that appeared to be the same one they had seen in the video. They also saw two men emerge from that vehicle and who allegedly appeared to be the men from the video, and allegedly dressed in the same clothing they had been wearing the prior day.

35. A third man was seated inside the white mini-van, alleged to be Plaintiff ROGER CORTES. While the other two men were inside of the store, HUCKELBERRY and SIKOS watched as CORTES emerged from the mini-van and walked around the parking lot. SIKOS and HUCKELBERRY did not approach him at the time.

36. At that time and place, HUCKELBERRY requested multiple other Tactical Units respond to her location in order to conduct a "Dynamic Vehicle Takedown" of the white mini-van. While the two suspects were inside the Target store, HUCKELBERRY and SIKOS remained undercover, awaiting the arrival of the multiple other undercover police vehicles and Orlando Police Department officers from the North and East tactical units.

37. HUCKELBERRY ordered the Takedown once the two suspects entered the white mini-van.

38. HUCKELBERRY'S plan was to use the OPD issued F-150 driven by SIKOS as the "rear block" on the white mini-van. The F-150 was equipped with "Buddy Bumpers" and a winch. The "Buddy Bumpers" were sometimes used to push vehicles out of a roadway after an accident.

39. The police vehicle being driven by police officer PENNINGTON was to serve as the "front block" in the Takedown.

40. KUZMA was ordered to move in on the scene as cover for the rear and front blocking vehicles.

41. Upon implementing the front block, and after the white minvan was pinned and contained, PENNINGTON exited the vehicle, and SIKOS continued to push the minivan using the Buddy Bumpers from the rear block.

42. At that time and place, and without cause or provocation from Mr. Cortes, PENNINGTON proceeded to fire a total of 3 shots at the mini-van.

43. After the shots were fired, another unmarked OPD vehicle driven by officer KUZMA, pulled in sideways to block the secondary exit. The minivan, being pushed from the rear, was forced into the passenger side of KUZMA'S blocking vehicle by SIKOS's police car.

44. Subsequently, and without cause or provocation, KUZMA fired six gunshots into the mini-van through his vehicle's closed passenger side window.

45. The Takedown was captured by the video cameras from the Target store.

46. At least five bullets hit MR. CORTES, causing catastrophic and life threatening injuries.

47. SIKOS ultimately charged, arrested, and imprisoned MR. CORTES for Attempted Felony Murder, Attempted Aggravated Battery with Motor Vehicle, Resisting Officer with Violence (with weapon), and Aggravated Fleeing/Attempting to Elude Law Enforcement with Property Damage.

48. All charges have since been dropped against MR. CORTES.

49. MR. CORTES was charged with the enumerated above violent crimes involving a motor vehicle, including one that included a mandatory life prison sentence, yet SIKOS and HUCKELBERRY conducted absolutely no investigation into the enumerated above allegations, took no pictures, interviewed no witnesses, and inspected no evidence from the scene. Neither SIKOS nor HUCKELBERRY wrote a report in connection with the suspected credit card investigation, despite the reality that the investigation of the criminal offenses charged by SIKOS is the responsibility of the charging agency, the OPD.

50. FDLE agent, Christopher Woehr ("WOEHR"), investigated this accident. WOEHR's inspection of the scene led him to conclude that there were no acceleration marks on the ground that came from the white mini van driven by MR. CORTES. Rather, WOEHR found acceleration marks on the Target pavement that he concluded came from SIKOS' OPD issued, F-150 pickup truck, and had pushed MR. CORTES in the white mini-van from behind.

51. WOEHR consulted with Master Deputy Weyland of the Orange County Sheriff's Office and their review of the Takedown led them to conclude SIKOS pushed the white mini-van driven by MR. CORTES into the police cars in front of him.

52. Within hours of the Takedown, SIKOS retrieved his Orlando Police Department issued F-150 and put it back to immediate use. SIKOS, at some point after retrieving his vehicle replaced the tires on the F-150.

53. FDLE initially took custody of the white mini-van occupied by ROGER CORTES. The white mini-van was released to OPD and destroyed. There is no evidence that any investigation was conducted on this vehicle.

54. The owner of the white mini-van was Robert Cortes, the brother of ROGER CORTES. There is no evidence at this time to suggest Robert Cortes was notified of the release of his vehicle to OPD or of its destruction.

55. OPD never conducted an investigation of the scene of the incident to look for evidence to prove or disprove the allegations that MR. CORTES tried to flee or that MR. CORTES attempted to murder police officers in the process of attempting to flee. No OPD officer or agent of that department ever searched the ground for acceleration marks or undertook any type of accident reconstruction analysis.

56. OPD never interviewed other civilian witnesses at the scene of the Target parking lot and Takedown. The incident occurred on a Sunday afternoon before Thanksgiving, in a crowded parking lot.

57. DEMINGS, or her predecessor, failed to adequately train and/or supervise SIKOS, HUCKELBERRY, PENNINGTON, and KUZMA regarding restrictions against investigating crimes involving family members, and the appropriate use of arrest powers and the

use of non-deadly force. By her failure to provide the aforementioned training and supervision, DEMINGS caused SIKOS, HUCKELBERRY, PENNINGTON and KUZMA to fail to engage in a lawful arrest, and to use inappropriate levels of force against ROGER CORTES. DEMINGS, or her predecessor, also failed to adequately train and/or supervise SIKOS, HUCKELBERRY, PENNINGTON, and KUZMA regarding conflict of interest and proper protocol for the investigation of non-violent offenses such as the one that allegedly prompted the Takedown.

58. DEMINGS caused the unnecessary and unreasonable use of force against ROGER CORTES by not conducting full and impartial administrative reviews of excessive force and unlawful arrest situations such as befell ROGER CORTES at the hands of the Defendants, and by failing to impose disciplinary sanctions on employees guilty of improper conduct.

59. As a direct result of the collective Defendants' acts, ROGER CORTES fell victim to multiple gunshot wounds, and has suffered permanent injury, severe pain and suffering, the cost of nursing and medical care and hospitalization, loss of earnings and earning capacity, and mental anguish.

60. DEMINGS, or her predecessor, prior to hiring co-Defendants, failed to conduct an adequate background, psychological, character and fitness investigations, and further failed to inquire into or investigate prior experience as a police officer in other jurisdictions, and thus negligently hired co-Defendants as police officers, and thereafter continued to fail to make these same inquiries and investigations and negligently retained co-Defendants as police officers within the ranks of the OPD. Alternatively, DEMINGS, or her predecessor, did make inquiries into the background and prior law enforcement experience of co-Defendants, and having learned of prior misdeeds and allegations concerning violation of State and Federal laws, negligently hired co-Defendants as police officers notwithstanding this knowledge.

## COUNT I

**Violation of MR. CORTES' Fourth Amendment Rights against use of excessive force under 42 U.S.C. §1983 (as to Defendant DEMINGS)**

61.    ROGER CORTES incorporates and realleges the allegations contained in paragraphs 1-60 as if fully set forth herein.

62.    The deprivation of the constitutional rights of ROGER CORTES arose out of the government custom established and maintained by DEMINGS, as outlined herein. DEMINGS established, maintained, and allowed a widespread practice and custom of deprivation of constitutional rights, including the use of excessive force and the use of deadly force without cause or provocation, in violation of the Fourth, Fifth, and Fourteenth Amendments, and such practice had become customary in the City of Orlando.

63.    DEMINGS was otherwise responsible for express policy related to use of force regarding offenses such as the suspected offenses that allegedly formed the basis for the subject takedown, and such express policy directly led to the deprivation of the constitutional rights of ROGER CORTES, including his Fourth, Fifth, and Fourteenth Amendment rights.

64.    Through the acts outlined herein, including paragraphs 58-61, above, DEMINGS directly caused the deprivation of the constitutional rights of ROGER CORTES.

65.    Additionally, DEMINGS established and maintained an express policy failing to mandate adequate supervision, hiring, in-servicing, training, discipline, and retention which directly caused the deprivation of ROGER CORTES' constitutional rights, including his Fourth, Fifth, and Fourteenth Amendments rights.

66.    By reason of the foregoing, DEMINGS violated 42 U.S.C. §1983.

67. As a direct and proximate result of the foregoing, ROGER CORTES suffered bodily injury, mental anguish, oppression, loss of earnings and earning capacity, loss of dignity, loss of liberty, medical and nursing treatment, hospitalization, and damage to reputation.

**WHEREFORE**, Plaintiff ROGER CORTES prays that this Court enter judgment against Defendant, DEMINGS, for compensatory and punitive damages, and where applicable, costs and attorneys fees, trial by jury, and grant such further relief as this Court deems just.

## COUNT II

**Violation of MR. CORTES' Fourth Amendment Rights against use of excessive force under 42 U.S.C. §1983 (as to Defendant THE CITY OF ORLANDO)**

68. ROGER CORTES realleges paragraphs 1-60 as though fully set forth herein.

69. The deprivation of the constitutional rights of ROGER CORTES arose out of the government custom established and maintained by THE CITY OF ORLANDO, as outlined herein. Additionally, THE CITY OF ORLANDO established and maintained a widespread practice of deprivation of constitutional rights, including the use of excessive force and the use of deadly force without cause or provocation, in violation of the Fourth, Fifth, and Fourteenth Amendments, and such practice had become customary in the City of Orlando.

70. THE CITY OF ORLANDO was otherwise responsible for express policy regarding use of force regarding offenses such as the one that allegedly formed the basis for the subject takedown, which directly led to the deprivation of the constitutional rights of ROGER CORTES, including his Fourth, Fifth, and Fourteenth Amendment rights.

71. Additionally, THE CITY OF ORLANDO established and maintained an express policy failing to mandate adequate supervision, hiring, in-servicing, training, discipline, and

retention which directly caused the deprivation of ROGER CORTES' constitutional rights, including his Fourth, Fifth, and Fourteenth Amendment rights.

72. By reason of the foregoing, THE CITY OF ORLANDO violated 42 U.S.C. §1983.

73. As a direct and proximate result of the foregoing, ROGER CORTES suffered bodily injury, mental anguish, oppression, loss of earnings and earning capacity, loss of dignity, loss of liberty, medical and nursing treatment, hospitalization, and damage to reputation.

**WHEREFORE**, Plaintiff ROGER CORTES prays that this Court enter judgment against Defendant, THE CITY OF ORLANDO, for compensatory and punitive damages, and where applicable, costs and attorneys fees, trial by jury, and grant such further relief as this Court deems just.

## COUNT III

**Violation of MR. CORTES' Fourth Amendment Rights against use of excessive force under 42 U.S.C. §1983 (as to Defendant SIKOS)**

74. ROGER CORTES realleges paragraphs 1-60 as though fully set forth herein.

75. SIKOS, in his official capacity, acting alone and in concert with co-Defendants, and in the course and scope of his employment as a police officer with the Orlando Police Department, exercised excessive and unreasonable force on the person of Plaintiff ROGER CORTES.

76. SIKOS' behavior, in his official capacity, acting alone and in concert with co-Defendants, was shocking to the conscience.

77. Acting under the color of law, as agent of and with the authority of the CITY OF ORLANDO, Florida, SIKOS intentionally and with complete, reckless, and callous disregard and indifference for ROGER CORTES' civil rights, caused ROGER CORTES to be deprived of

his constitutional rights, including those under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by:

a. using a degree of force that was unreasonable under the circumstances and in arresting him without probable cause, in violation of the right of ROGER CORTES to be free from unreasonable seizure under the Fourth Amendment;

b. subjecting ROGER CORTES, to punishment without the benefit of a jury trial in violation of his rights under the Fifth Amendment;

c. depriving ROGER CORTES of due process of law secured by the Fourteenth Amendment including his right to be free from the use of unreasonable and excessive force after apprehension.

78. By reason of the foregoing, SIKOS violated 42 U.S.C. §1983.

79. As a direct and proximate result of the foregoing, ROGER CORTES suffered bodily injury, mental anguish, oppression, loss of earnings and earning capacity, loss of dignity, loss of liberty, medical and nursing treatment, hospitalization, and damage to reputation.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant, SIKOS, for compensatory and punitive damages, and where applicable, costs and attorney's fees, trial by jury award damages, and grant such further relief as this Court deems just.

## COUNT IV

**Violation of MR. CORTES' Fourth Amendment Rights against use of excessive force under 42 U.S.C. §1983 (as to Defendant HUCKELBERRY)**

80. ROGER CORTES realleges paragraphs 1-60 as though fully set forth herein.

81. HUCKELBERRY, in her official capacity, acting alone and in concert with co-Defendants, and in the course and scope of his employment as a police officer with the Orlando

Police Department, exercised excessive and unreasonable force on the person of Plaintiff ROGER CORTES.

82.   HUCKELBERRY's behavior, in her official capacity, acting alone and in concert with co-Defendants, was shocking to the conscience.

83.   Acting under the color of law, as agent of and with the authority of the CITY OF ORLANDO, Florida, HUCKELBERRY intentionally and with complete, reckless, and callous disregard and indifference for ROGER CORTES' civil rights, caused ROGER CORTES to be deprived of his constitutional rights, including those under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by:

   a.   using a degree of force that was unreasonable under the circumstances and in arresting him without probable cause, in violation of the right of ROGER CORTES to be free from unreasonable seizure under the Fourth Amendment;

   b.   subjecting ROGER CORTES, to punishment without the benefit of a jury trial in violation of his rights under the Fifth Amendment;

   c.   depriving ROGER CORTES of due process of law secured by the Fourteenth Amendment including his right to be free from the use of unreasonable and excessive force after apprehension.

84.   By reason of the foregoing, HUCKELBERRY violated 42 U.S.C. §1983.

85.   As a direct and proximate result of the foregoing, ROGER CORTES suffered bodily injury, mental anguish, oppression, loss of earnings and earning capacity, loss of dignity, loss of liberty, medical and nursing treatment, hospitalization, and damage to reputation.

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant, HUCKELBERRY, for compensatory and punitive damages, and where applicable, costs and

attorney's fees, trial by jury award damages, and grant such further relief as this Court deems just.

## COUNT V

**Violation of MR. CORTES' Fourth Amendment Rights against use of excessive force under 42 U.S.C. §1983 (as to Defendant PENNINGTON)**

86.  ROGER CORTES realleges paragraphs 1-60 as though fully set forth herein.

87.  PENNINGTON, in his official capacity, acting alone and in concert with co-Defendants, and in the course and scope of his employment as a police officer with the Orlando Police Department, exercised excessive and unreasonable force on the person of Plaintiff ROGER CORTES.

88.  PENNINGTON's behavior, in his official capacity, acting alone and in concert with co-Defendants, was shocking to the conscience.

89.  Acting under the color of law, as agent of and with the authority of the CITY OF ORLANDO, Florida, PENNINGTON intentionally and with complete, reckless, and callous disregard and indifference for ROGER CORTES' civil rights, caused ROGER CORTES to be deprived of his constitutional rights, including those under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by:

    a.  using a degree of force that was unreasonable under the circumstances and in arresting him without probable cause, in violation of the right of ROGER CORTES to be free from unreasonable seizure under the Fourth Amendment;

    b.  subjecting ROGER CORTES, to punishment without the benefit of a jury trial in violation of his rights under the Fifth Amendment;

   c. depriving ROGER CORTES of due process of law secured by the Fourteenth Amendment including his right to be free from the use of unreasonable and excessive force after apprehension.

90. By reason of the foregoing, PENNINGTON violated 42 U.S.C. §1983.

91. As a direct and proximate result of the foregoing, ROGER CORTES suffered bodily injury, mental anguish, oppression, loss of earnings and earning capacity, loss of dignity, loss of liberty, medical and nursing treatment, hospitalization, and damage to reputation.

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant, PENNINGTON, for compensatory and punitive damages, and where applicable, costs and attorney's fees, trial by jury award damages, and grant such further relief as this Court deems just.

## COUNT VI

**Violation of MR. CORTES' Fourth Amendment Rights against use of excessive force under 42 U.S.C. §1983 (as to Defendant KUZMA)**

92. ROGER CORTES realleges paragraphs 1-60 as though fully set forth herein.

93. KUZMA, in his official capacity, acting alone and in concert with co-Defendants, and in the course and scope of his employment as a police officer with the Orlando Police Department, exercised excessive and unreasonable force on the person of Plaintiff ROGER CORTES.

94. KUZMA's behavior, in his official capacity, acting alone and in concert with co-Defendants, was shocking to the conscience.

95. Acting under the color of law, as agent of and with the authority of the CITY OF ORLANDO, Florida, KUZMA intentionally and with complete, reckless, and callous disregard and indifference for ROGER CORTES' civil rights, caused ROGER CORTES to be deprived of

his constitutional rights, including those under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by:

    a.    using a degree of force that was unreasonable under the circumstances and in arresting him without probable cause, in violation of the right of ROGER CORTES to be free from unreasonable seizure under the Fourth Amendment;

    b.    subjecting ROGER CORTES, to punishment without the benefit of a jury trial in violation of his rights under the Fifth Amendment;

    c.    depriving ROGER CORTES of due process of law secured by the Fourteenth Amendment including his right to be free from the use of unreasonable and excessive force after apprehension.

96.    By reason of the foregoing, KUZMA violated 42 U.S.C. §1983.

97.    As a direct and proximate result of the foregoing, ROGER CORTES suffered bodily injury, mental anguish, oppression, loss of earnings and earning capacity, loss of dignity, loss of liberty, medical and nursing treatment, hospitalization, and damage to reputation.

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant, KUZMA, for compensatory and punitive damages, and where applicable, costs and attorney's fees, trial by jury award damages, and grant such further relief as this Court deems just.

Date: 7-25-12

Jason A. Paul, Esq.   FBN: 0026758
jpaul@orlandotriallaw.com
David A. Paul, Esq.   FBN: 0021385
dpaul@orlandotriallaw.com
Paul & Perkins, P.A.
3117 Edgewater Drive
Orlando, FL 32804
(407) 540-0122 – telephone
(407) 540-0510 - facsimile